**Certiorari Denied, July 19, 2012, No. 33,665; Certiorari Denied, August 1, 2012, No. 33,678**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2012-NMCA-092**

**Filing Date: May 24, 2012**

**Docket No. 30,281**

**STATE OF NEW MEXICO,**

  **Plaintiff-Appellee,**

**v.**

**NICK ADAM TRUJILLO,**

  **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
**Stephen K. Quinn, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
M. Anne Kelly, Assistant Attorney General
Albuquerque, NM

for Appellee

Jacqueline L. Cooper, Chief Public Defender
Karl Erich Martell, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**WECHSLER, Judge.**

**{1}** Defendant Nick Adam Trujillo appeals his conviction for second degree criminal sexual contact of a minor (CSCM). Defendant argues that (1) the State presented insufficient evidence to support Defendant's conviction, (2) the district court deprived Defendant of his

1

rights to due process and confrontation by not requiring the police case agent to testify, and (3) the district court erred in sentencing Defendant for second degree CSCM because (a) the jury was instructed using the third degree CSCM jury instruction, or, alternatively, (b) Defendant's conduct did not violate the statute for second degree CSCM, NMSA 1978, § 30-9-13(B) (2003), and instead his conduct is a third degree felony contrary to Section 30-9-13(C). We hold that the State presented sufficient evidence to support Defendant's conviction and that the district court did not violate Defendant's confrontation or due process rights. However, because Defendant's conduct amounted to a third degree felony under Section 30-9-13(C) and not a second degree felony under Section 30-9-13(B), the district court erred by denying Defendant's motion to amend the degree of charge. Accordingly, we reverse the CSCM conviction under Section 30-9-13(B) (second degree felony) and remand for entry of a CSCM conviction under Section 30-9-13(C) (third degree felony).

## BACKGROUND

**{2}**    A jury found Defendant guilty of second degree CSCM, contrary to Section 30-9-13(B)(1), after Defendant allegedly placed the hand of his girlfriend's ten-year-old daughter (C.A.) on his unclothed penis. C.A. testified that she usually slept on the couch, but that the night of the incident she was scared. She got up and asked her mother (Mother) if she could sleep in Mother's room with Mother, Defendant, and her brother. C.A. watched television for a little while and then went to sleep in between Defendant and her brother. C.A. awakened to Defendant grabbing her wrist and "put[ting her hand] on his middle part." She stated that her hand was under Defendant's clothing and that she touched skin. When asked whether Defendant was awake, C.A. stated that she believed he was awake and that she saw his eyes open and then close. C.A. then said Defendant's name, and it caused Defendant to turn his head around and Mother to wake up. Mother went into the kitchen, and C.A. followed her and told Mother what had happened. Mother told C.A. something to the effect that Defendant "must have been asleep, dreaming, or something" and went back to bed.

**{3}**    Defendant presented testimony from Mother that C.A. did not stay at the house with her, Defendant, and C.A.'s siblings on the night of the incident. Mother additionally testified that C.A. always wanted to be the focus of attention and was jealous of Defendant and her siblings, and, therefore, Mother and C.A. were not close. Mother also testified that C.A. had previously made similar allegations about Mother's ex-boyfriend and his father.

**{4}**    After the jury returned its verdict, Defendant filed a motion to amend the degree of the charge, arguing that Defendant's conduct was not prescribed by Section 30-9-13(B) as a second degree felony, but instead was a third degree felony under Section 30-9-13(C). The district court denied the motion and sentenced Defendant for second degree CSCM. This appeal timely followed.

## SUFFICIENCY OF THE EVIDENCE

**{5}**    Defendant contends that the State failed to present sufficient evidence that he

intentionally caused C.A. to touch his unclothed penis. We review the sufficiency of the evidence pursuant to a substantial evidence standard. *State v. Sutphin*, 107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988). "The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Garcia*, 114 N.M. 269, 274, 837 P.2d 862, 867 (1992) (alteration, internal quotation marks, and citation omitted). This Court evaluates the sufficiency of the evidence in a criminal case by viewing the evidence in the light most favorable to the verdict, resolving all conflicts and indulging all permissible inferences in favor of upholding the conviction, and disregarding all evidence and inferences to the contrary. *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829. We will not substitute our judgment for that of the factfinder, nor will we reweigh the evidence. *State v. Hernandez*, 115 N.M. 6, 26, 846 P.2d 312, 332 (1993).

**{6}** In order for the jury to find Defendant guilty of CSCM, the State had to prove that (1) Defendant caused C.A. to touch his unclothed penis, and (2) C.A. was twelve years of age or under. C.A.'s testimony regarding the incident was sufficient for a reasonable jury to conclude that Defendant committed CSCM by causing C.A. to touch his unclothed penis. *See State v. Nichols*, 2006-NMCA-017, ¶¶ 5-11, 139 N.M. 72, 128 P.3d 500 (holding that the victim's partially impeached testimony was sufficient evidence to convict a defendant for criminal sexual penetration). Although Defendant argues that the evidence did not support a conclusion that he acted intentionally, "[i]ntent is subjective and is almost always inferred from other facts in the case, as it is rarely established by direct evidence." *State v. Sosa*, 2000-NMSC-036, ¶ 9, 129 N.M. 767, 14 P.3d 32 (internal quotation marks and citation omitted). In this case, the evidence that Defendant caused C.A. to touch his unclothed penis by grabbing her wrist, while in bed, with his eyes open, is sufficient to infer that he committed CSCM intentionally.

**{7}** Defendant points to contrary evidence in support of his argument that the State failed to prove that he intentionally committed CSCM. He argues that the evidence established that there was no source of light in the bedroom where the events occurred because the electricity was out, the lights were off, and the curtains were closed, and, therefore, C.A. could not have seen whether Defendant's eyes were open. Further, Mother testified that C.A. stayed at a friend's house the night of the incident, and Defendant "vehemently denied the allegations below." Although this evidence may support Defendant's denial of the allegations, it is not the role of this Court to substitute our judgment for that of the factfinder. *See Hernandez*, 115 N.M. at 26, 846 P.2d at 332. Further, "it is the role of the factfinder to judge the credibility of witnesses and determine the weight of evidence." *State v. LaPietra*, 2010-NMCA-009, ¶ 11, 147 N.M. 569, 226 P.3d 668 (alteration, internal quotation marks, and citation omitted).

**CASE AGENT'S TESTIMONY**

**{8}** Defendant argues that the district court violated his confrontation right to cross-examine witnesses and his due process rights because the district court did not require the

police case agent to testify at trial and, thereby, did not allow him to present a likely defense. As both issues present a question of law, we review de novo. *See State v. Gonzales*, 1999-NMSC-033, ¶ 22, 128 N.M. 44, 989 P.2d 419 ("Confrontation Clause claims are issues of law that we review de novo." (internal quotation marks and citation omitted)); *State v. Johnson*, 2004-NMCA-058, ¶ 12, 135 N.M. 567, 92 P.3d 13 (reviewing a defendant's claim that witness testimony violated his due process rights de novo).

**{9}** Four days before trial, the State informed the district court that Detective Randy Pitcock, the case agent who conducted the investigation, was going to be on vacation during the trial. The State had listed Detective Pitcock on its witness list and had subpoenaed him for trial. However, the State told the district court that it did not want the matter continued, and Detective Pitcock would probably not be called as a witness. The State further told the district court that it did not need Detective Pitcock's testimony to prove its case. Defense counsel did not subpoena Detective Pitcock and stated that it was not defense's practice to subpoena the case agent or other officers.

**{10}** Defense counsel argued that Detective Pitcock needed to be available for information regarding matters that may arise during trial. He noted that Detective Pitcock interviewed all the witnesses in the case and was responsible for the entire investigation in the case. He argued that Defendant had a right to cross-examine and confront witnesses. The district court stated that Detective Pitcock was not going to be a State witness and that it would not compel his attendance or move the trial date unless defense counsel presented a compelling need.

**{11}** At the conclusion of trial, defense counsel raised a number of perceived issues regarding Detective Pitcock's absence. He argued that Detective Pitcock's absence did not allow Defendant to present evidence regarding (1) prior allegations made by C.A. against her stepfather two years earlier, which Detective Pitcock noted in his report; (2) Defendant's denial of the allegations and calm demeanor when arrested; (3) any information Detective Pitcock had regarding whether C.A.'s residence had electricity the night of the incident, as well as Detective Pitcock's specialized knowledge in these types of cases; (4) whether Detective Pitcock collected clothing, bedding, or photographs at the scene; and (5) whether Detective Pitcock investigated claims that C.A. stayed at a friend's house, including whether Mother drove C.A. to school the day after the alleged incident.

**{12}** Defendant first argues that by not requiring Detective Pitcock to testify, the district court violated his confrontation rights because he was not able to cross-examine witnesses and ensure the reliability of the evidence presented by the State. In support, Defendant cites cases addressing whether the trial court unduly restricted the scope of cross-examination of a prosecution witness. *See Olden v. Kentucky*, 488 U.S. 227, 229-33 (1988) (addressing whether the trial court unduly restricted the scope of cross-examination by not allowing the defendant to cross-examine the alleged victim whether she was having an affair, which was relevant to her motive); *Chambers v. Mississippi*, 410 U.S. 284, 294-303 (1973) (addressing whether the trial court erred by not allowing cross-examination of a person who confessed

to the crime because of a state evidentiary rule); *State v. Smith*, 2001-NMSC-004, ¶ 19, 130 N.M. 117, 19 P.3d 254 (addressing whether the district court unduly limited the cross-examination of two state witnesses); *State v. Martinez*, 1996-NMCA-109, ¶ 14, 122 N.M. 476, 927 P.2d 31 (addressing whether the district court unduly restricted cross-examination of a state witness by not allowing the defendant to inquire into whether he received leniency from the state). However, this is not a case in which the district court limited the scope of cross-examination of a State witness or admitted testimonial evidence without allowing Defendant to cross-examine its source. The State did not call Detective Pitcock as a witness or use information from his investigation in proving its case. Under these circumstances, the district court's actions did not implicate Defendant's confrontation rights. *See State v. Romero*, 2006-NMCA-045, ¶ 46, 139 N.M. 386, 133 P.3d 842 (stating that the confrontation clause applies only to testimonial statements including "(1) *ex parte* in-court testimony or its functional equivalent . . .; (2) extrajudicial statements . . . contained in formalized testimonial materials . . .; and (3) statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial" (internal quotation marks and citation omitted)).

**{13}**     Defendant further argues that the district court's failure to require Detective Pitcock to testify violated his due process and compulsory process rights because "the admission of evidence that is relevant and necessary to a fair determination of the issue of . . . [D]efendant's guilt or innocence is *compelled* by constitutional due process." *See Rock v. Arkansas*, 483 U.S. 44, 46-49, 62 (1987) (holding that the trial court violated the defendant's right to present a defense and the right to compulsory process by not allowing the defendant's hypnotically-refreshed testimony); *Crane v. Kentucky*, 476 U.S. 683, 690-91 (1986) (holding that the trial court denied the defendant the right to present a defense by not allowing testimony regarding the voluntariness of his confession); *Washington v. Texas*, 388 U.S. 14, 16-17, 23 (1967) (holding that the trial court deprived the defendant of his right to compulsory process by not requiring the defendant's accomplice to testify). Defendant's argument is that the district court denied him the right to question Detective Pitcock regarding the investigation, C.A.'s previous allegations against her stepfather, and Defendant's calm demeanor when arrested, and that this information was relevant to whether Defendant committed CSCM. However, the district court did not prevent Defendant from presenting any evidence. Had Defendant believed that Detective Pitcock had exculpatory information, Defendant could have subpoenaed him and compelled him to testify. Defendant does not cite any authority for the proposition that a defendant is denied due process by the unavailability of a state witness. *See In re Adoption of Doe*, 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984) ("We assume where arguments in briefs are unsupported by cited authority, counsel after diligent search, was unable to find any supporting authority."). The district court did not violate Defendant's confrontation rights or due process rights by not requiring Detective Pitcock to testify.

**DEGREE OF CHARGE**

**{14}**     The State instructed the jury that "to find . . . [D]efendant guilty of [CSCM], the

5

[S]tate must prove to your satisfaction beyond a reasonable doubt [that D]efendant caused [C.A.] to touch the unclothed penis of . . . [D]efendant." This instruction was modeled after UJI 14-925 NMRA (2005) (amended 2010), which was the uniform jury instruction in effect at the time for third degree CSCM. In relevant part, UJI 14-925 (2005) requires that the state prove that "[t]he defendant . . . caused _____ (*name of victim*) to touch the _____ [part of anatomy touched] of the defendant[.]" The State inserted "unclothed penis" as the part of the anatomy touched, and the district court gave the instruction to the jury, determining that it accurately reflected second degree CSCM.

**{15}** Defendant argues that the district court erred by sentencing Defendant for second degree CSCM because the State instructed the jury using the language of the uniform jury instruction for third degree CSCM. Defendant's claim is that no jury instruction existed at the time for second degree CSCM and that the State did not properly modify the third degree CSCM instruction to reflect the second degree charge and, therefore, the district court erred by sentencing Defendant for second degree CSCM. Alternatively, Defendant argues that his conduct as reflected by the jury instruction was legally insufficient to support a second degree CSCM conviction, and, therefore, the district court erred in not granting his motion to amend the degree of charge.

**{16}** Regardless of whether the issue is framed as an illegal sentence or a legally insufficient jury instruction, our inquiry is the same: whether Defendant's conduct, causing C.A. to touch Defendant's unclothed penis, as reflected in the jury instruction, is second degree or third degree CSCM under Section 30-9-13. Our analysis requires statutory construction, an issue of law that we review de novo. *See State v. Torres*, 2006-NMCA-106, ¶ 5, 140 N.M. 230, 141 P.3d 1284. In interpreting statutes, our primary goal is to give effect to the intent of the Legislature. *Id.* ¶ 8. The primary indicator of legislative intent is the plain language of the statute. *State v. Gonzales*, 2011-NMCA-081, ¶ 13, 150 N.M. 494, 263 P.3d 271, *cert. granted*, 2011-NMCERT-008, 268 P.3d 514. Additionally, the "rule of lenity counsels that criminal statutes should be interpreted in the defendant's favor when insurmountable ambiguity persists regarding the intended scope of a criminal statute." *State v. Castillo*, 2011-NMCA-046, ¶ 20, 149 N.M. 536, 252 P.3d 760 (internal quotation marks and citation omitted), *cert. denied*, 2011-NMCERT-004, 150 N.M. 648, 264 P.3d 1171.

**{17}** We begin by looking at the relevant statutory provisions. Section 30-9-13(A) defines CSCM generally as "the unlawful and intentional touching of or applying force to the intimate parts of a minor or the unlawful and intentional causing of a minor to touch one's intimate parts." Section 30-9-13(C)(1) states that all "[CSCM] perpetrated . . . on a child under thirteen years of age" is third degree CSCM. Section 30-9-13(B)(1) provides the definition of second degree CSCM. It states that second degree CSCM "consists of all criminal sexual contact of the unclothed intimate parts of a minor perpetrated . . . on a child under thirteen years of age[.]"

**{18}** Applying the plain meaning of Section 30-9-13(B)(1), Defendant's conduct in this case is third degree CSCM, not second degree CSCM. *See Gonzales*, 2011-NMCA-081, ¶

6

13. By enacting Section 30-9-13(B)(1), the Legislature classified only the "criminal sexual contact of the unclothed intimate parts *of a minor*" as second degree CSCM. (Emphasis added.) All other acts of CSCM on a child under thirteen years of age are considered third degree CSCM. Although the general definition of CSCM in Section 30-9-13(A) includes "causing of a minor to touch one's intimate parts[,]" Section 30-9-13(B) specifically limits second degree to CSCM to instances in which a defendant touches or applies force to the unclothed intimate parts of a minor. *See State v. Arellano*, 1997-NMCA-074, ¶ 5, 123 N.M. 589, 943 P.2d 1042 (recognizing as a rule of statutory interpretation that a specific statute controls over a more general statute). The State presented evidence that Defendant caused C.A. to touch his unclothed penis while in bed, which is conduct that amounts to third degree CSCM. The State did not present any evidence, and the jury instruction did not reflect that Defendant touched the unclothed intimate parts of C.A., and, therefore, it was error for the district court to deny Defendant's motion to amend the charge and sentence Defendant for second degree CSCM.

**{19}** The State argues that our interpretation of Section 30-9-13(B) is incorrect and that the only differentiation between third and second degree CSCM intended by the Legislature is that the intimate parts involved be unclothed for second degree CSCM. First, the State argues that the phrase "of a minor" in Section 30-9-13(B) does not modify "the unclothed intimate parts of" and instead relates to the name of the crime. Under this reading, the State argues that the Legislature intended Section 30-9-13(B)(1) to state that "[CSCM] in the second degree consists of all [CSCM] of the unclothed intimate parts perpetrated" on a child under thirteen years of age. The State continues that this interpretation better reflects the "legislative judgment, expressed in [Section 30-9-13(A)], that CSCM is both touching a minor's private parts and causing a minor to touch one's private parts" and that the Legislature, by making both touching a minor's clothed intimate parts and causing a minor to touch one's clothed intimate parts a third degree felony has "already determined that both actions . . . are equally culpable."

**{20}** Although we acknowledge the State's argument, the State's construction of Section 30-9-13(B) would require this Court to essentially rewrite the statute, something this Court will not do. *See State v. Johnson*, 2008-NMCA-106, ¶ 12, 144 N.M. 629, 190 P.3d 350, *rev'd on other grounds by* 2009-NMSC-049, 147 N.M. 177, 218 P.3d 863. The plain language reflects a legislative judgment that a defendant who commits CSCM by touching a minor's unclothed intimate areas is more culpable, and should be punished to a higher degree, than a defendant who commits CSCM by other means, including causing a minor to touch the defendant's unclothed intimate areas. It is not the role of this Court to question such a legislative judgment. *See State v. Maestas*, 2007-NMSC-001, ¶ 25, 140 N.M. 836, 149 P.3d 933 (stating that "it is not the role of this Court to question the wisdom, policy or justness of legislation enacted by our [L]egislature"). Further, to the extent that the State argues that Section 30-9-13(B) is ambiguous in light of the definition of CSCM in Section 30-9-13(A), the rule of lenity requires that we construe the statute in Defendant's favor. *See Castillo*, 2011-NMCA-046, ¶ 20.

**{21}** The State cites *State v. Martinez*, 1998-NMSC-023, 126 N.M. 39, 966 P.2d 747, *State v. Davis*, 2003-NMSC-022, 134 N.M. 172, 74 P.3d 1064, and *State v. Rivera*, 2004-NMSC-001, 134 N.M. 768, 82 P.3d 939, for the proposition that this Court has a "policy of viewing related statutes in light of their common legislative policies" and the legislative intent of the 2003 amendment to Section 30-9-13, which established second degree CSCM, was to increase culpability for offenders. Therefore, the State argues that this Court should interpret Section 30-9-13 in light of its legislative intent to increase penalties for CSCM offenders to include circumstances when a defendant causes a minor to touch the defendant's intimate parts. However, the State's argument is premised on Section 30-9-13 being ambiguous as to whether Defendant's conduct fit the definition in the statute. As we have determined, the plain language of Section 30-9-13(B) indicates that the Legislature intended to increase penalties for only one type of CSCM, touching the unclothed intimate parts of a minor. *See State v. Block*, 2011-NMCA-101, ¶ 17, 150 N.M. 598, 263 P.3d 940 ("Under the plain meaning rule, when a statute's language is clear and unambiguous, we will give effect to the language and refrain from further statutory interpretation." (internal quotation marks and citation omitted)). Further, *Rivera*, *Davis,* and *Martinez* are further distinguishable because all three cases deal with sentencing issues and do not require interpreting a statute regarding the definition of a crime. *See Rivera*, 2004-NMSC-001, ¶ 5 (addressing whether the statute pertaining to a stay of execution when an appeal is pending applies to probation revocation proceedings); *Davis*, 2003-NMSC-022, ¶ 4 (addressing whether a statute requires consecutive sentences); *Martinez*, 1998-NMSC-023, ¶ 7 (addressing whether courts possess authority to grant presentence confinement credit for in-patient alcohol treatment programs for third offense driving while under the influence).

**{22}** Second degree CSCM as defined in Section 30-9-13(B) is limited to instances in which a defendant touches or applies force to the unclothed intimate parts of a minor. The State presented evidence that Defendant caused C.A. to touch his unclothed intimate parts, which is third degree CSCM. The district court therefore erred in denying Defendant's motion to amend the degree of charge, and we remand for the entry of a conviction for third degree CSCM and resentencing.

**CONCLUSION**

**{23}** The State presented sufficient evidence to support Defendant's conviction, and the district court did not violate Defendant's confrontation or due process rights. However, because Defendant's conduct was a third degree felony under Section 30-9-13(C) and not a second degree felony under Section 30-9-13(B), the district court erred by denying Defendant's motion to amend the charge. Accordingly, we reverse the CSCM conviction under Section 30-9-13(B) (second degree felony) and remand for entry of a CSCM conviction under Section 30-9-13(C) (third degree felony).

**{24}    IT IS SO ORDERED.**

_____

**JAMES J. WECHSLER, Judge**

**WE CONCUR:**

_____
**JONATHAN B. SUTIN, Judge**

_____
**LINDA M. VANZI, Judge**

**Topic Index for *State v. Trujillo*, No. 30,281**

**APPEAL AND ERROR**
Remand
Standard of Review
Substantial or Sufficient Evidence

**CONSTITUTIONAL LAW**
Confrontation
Due Process

**CRIMINAL LAW**
Sexual Exploitation of Children
Sexual Offenses

**CRIMINAL PROCEDURE**
Jury Instructions
Sentencing

**JURY INSTRUCTIONS**
Criminal Jury Instructions
Improper Jury Instruction

**STATUTES**
Interpretation
Legislative Intent