This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                    **NO. A-1-CA-35579**

**SALVADOR CURIEL,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF LUNA COUNTY**
**Daniel Viramontes, District Judge**

Hector H. Balderas, Attorney General
Emily Tyson-Jorgenson, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
C. David Henderson, Appellate Defender
MJ Edge, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**VANZI, Chief Judge.**

**{1}**  Defendant Salvador Curiel appeals his convictions after a jury found him guilty of aggravated burglary, aggravated battery against a household member with great bodily harm, and criminal trespass. We affirm in part, reverse in part, and remand the case to the district court for further proceedings consistent with this opinion.

**BACKGROUND**

**{2}**  Defendant and Lynne Hafer (Victim) had dated for five years and lived together at Victim's home for three of those years. They broke up, and Defendant moved out, but the two started seeing each other again. One evening while Defendant and his dogs were at Victim's residence, he and Victim got into an argument, and police were called to the home. Victim told the officer that she wanted Defendant "gone for the night." The officer gave Defendant a verbal trespass warning, telling him that he was "not allowed there" and if he came back he would be arrested for trespassing. Before Defendant left, he told the officer that he wanted to get his dogs from Victim's back yard. The officer told Defendant that he could come back the next morning with an officer to get his dogs and any other property he needed. After Defendant left, Victim heard the dogs barking outside and let them into her house because she did not want them to disturb the neighbors. She locked the doors to her home and went back to bed.

**{3}**  About two hours later, Defendant returned to Victim's home. He broke through the back door, entered the home, and kicked in Victim's bedroom door. Defendant

2

entered the bedroom, pulled Victim out of her bed and dragged her through the house to the back door, while beating her in the face and head. The injuries that Victim suffered from this beating included a knocked-out tooth; numerous lumps and bruises on her face, head, shoulders, arms, back, torso, and foot; and a sprained ankle. Defendant told Victim during the attack that she was "holding his dogs . . . hostage and that he was going to kill [her]." Defendant left the home before police arrived, and police were not able to locate him that night.

{4}     The reporting officer filed a criminal complaint against Defendant in the magistrate court, and the magistrate court issued a warrant for Defendant's arrest. Both the criminal complaint and the warrant charged Defendant with breaking and entering, aggravated battery against a household member, and criminal trespass. However, the criminal information later filed in the district court charged Defendant with aggravated burglary, aggravated battery against a household member, and criminal trespass, but not with breaking and entering. The aggravated burglary count in the criminal information contained the following allegations that are relevant to this appeal:

> **COUNT 1: Aggravated Burglary (Commits Battery)**, . . . [D]efendant did enter the dwelling house of [Victim] . . . without authorization or permission, with intent to commit Aggravated Burglary or theft when he got inside[.]

Also relevant are the following allegations contained in the criminal trespass count:

3

**COUNT 3: Criminal Trespass (Damage)**, . . . [D]efendant did knowingly enter [Victim's premises], without permission, and damaged or destroyed a bedroom door and back door[.]

A jury found Defendant guilty of all three charges. Defendant appeals each conviction. He asserts that there was insufficient evidence to convict him of aggravated burglary, the district court committed fundamental error because it gave the jury confusing instructions on crimes against household members, and his convictions for both aggravated burglary and criminal trespass violate his constitutional right to be free from double jeopardy.

**DISCUSSION**

**Insufficient Evidence**

{5}     Defendant asserts that there was insufficient evidence to convict him of aggravated burglary because the State did not prove that he entered Victim's home with the specific intent to "commit any felony or theft therein[.]" NMSA 1978, Section 30-16-4 (1963) (setting forth the elements of aggravated burglary). At trial, the prosecutor tendered the following instructions for aggravated burglary:

INSTRUCTION NO. 3

        For you to find [D]efendant guilty of aggravated burglary as charged in Count 1, the [S]tate must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:

        1.     [D]efendant entered a dwelling without authorization;

4

2.    [D]efendant entered the dwelling with the intent to commit breaking and entering once inside;

3.    [D]efendant touched or applied force to [Victim] in a rude or angry manner while entering or leaving, or while inside;

4.    This happened in New Mexico on or about the 24th day of November, 2014.

INSTRUCTION NO. 4

The elements of breaking and entering are as follows:

1.    [D]efendant entered the dwelling of [Victim] without permission; the least intrusion constitutes an entry;

2.    The entry was obtained by the breaking of a door;

3.    This happened in New Mexico on or about the 24th day of November, 2014.

Defendant contends that the State's theory underlying his aggravated burglary conviction was illogical and factually impossible: one cannot enter a home with the intent to break into that home once he was already inside. And, because the theory presented to the jury was factually impossible, he asserts that there is no set of facts sufficient to prove that he committed aggravated burglary.

{6}    The State concedes, and we agree, that the evidence presented at trial was not sufficient to convict Defendant of aggravated burglary under the theory presented to the jury. The State requests that we reverse the aggravated burglary conviction and remand the case to the district court for entry of judgment for breaking and entering

5

"as a lesser included offense" under the direct-remand rule sanctioned by our Supreme Court in *State v. Haynie*, 1994-NMSC-001, ¶ 4, 116 N.M. 746, 867 P.2d 416.

{7} In *Haynie*, the Court reversed the defendant's conviction for first degree murder and remanded the case to the district court for entry of judgment and resentencing for the lesser included charge of second degree murder. *Id.* ¶ 5. It held that, where "the evidence does not support the offense for which the defendant was convicted but does support a lesser included offense[,]" appellate courts "have the authority to remand a case for entry of judgment on the lesser included offense and resentencing rather than retrial[.]" *Id.* ¶ 4. "The rationale . . . is that there is no need to retry a defendant for a lesser included offense when the elements of the lesser offense necessarily were proven to a jury beyond a reasonable doubt in the course of convicting the defendant of the greater offense." *Id.* The Court considered the fact that "substantial evidence support[ed] the verdict" in determining that the defendant's conduct met the elements of the lesser included offense. *Id.*

{8} A decade later, our Supreme Court revisited *Haynie*'s direct-remand rule and emphasized that, "[i]n deciding whether direct remand is appropriate in these circumstances, . . . the inquiry is whether the interests of justice would be served by ordering a new trial." *State v. Villa*, 2004-NMSC-031, ¶ 9, 136 N.M. 367, 98 P.3d 1017. The *Villa* Court reversed this Court's remand to the district court because the

jury was not instructed on the elements of the lesser included offense, and therefore, the defendant did not have an opportunity to defend against that charge at trial. *Id.* ¶¶ 8 n.3, 9, 12. The Court acknowledged that, "[h]ad the State at trial requested instructions on the lesser[]included offenses and the trial court properly granted that request, the parties would have had a full and fair opportunity to marshal evidence and craft their argument to persuade the jury for or against the elements of those offenses." *Id.* ¶ 13.

{9}     Peculiarly, in this case, all of the elements of breaking and entering were contained within the jury instructions for aggravated burglary. "Breaking and entering, however, is not a lesser[]included offense of aggravated burglary under our former, strict elements test because each offense requires an element not included in the other." *State v. Hernandez*, 1999-NMCA-105, ¶ 25, 127 N.M. 769, 987 P.2d 1156. "Contrary to the common-law definition of burglary, New Mexico does not consider 'breaking' to be an element of burglary." *Id.*

{10}     Nevertheless, our review of the record in this case leads us to conclude that the proper disposition is direct remand for entry of judgment for breaking and entering, as the State has suggested. We reach this conclusion for several reasons.

{11}     First, we note that after the State presented its case-in-chief, defense counsel moved for directed verdict on the aggravated burglary charge, arguing that the State

7

presented no evidence that Defendant intended to commit a theft or a felony inside of Victim's home. A lengthy discussion ensued between the district court, the prosecutor, and defense counsel about whether the evidence showed that Defendant committed aggravated burglary or whether breaking and entering was the appropriate offense. The judge stated, "I tend to agree that this looks more like a breaking and entering. . . . Clearly the evidence points to that at this time, so I would go along with . . . a breaking and entering." Defense counsel also asserted that "breaking and entering . . . is a lesser included [offense]" to aggravated burglary, and argued that instead of aggravated burglary, the State could "proceed on a breaking and entering, perhaps." The prosecutor then pointed to *Hernandez* and stated her concern that breaking and entering was not a lesser included offense of aggravated burglary. *See* 1999-NMCA-105, ¶ 29. The court adjourned for lunch to allow it and defense counsel to review *Hernandez*. When the court reconvened, defense counsel stated that after reviewing *Hernandez*, he wanted to modify his argument to assert that the State could not go forward with breaking and entering because it is not a lesser included offense and Defendant did not have any notice of that charge. The district court denied Defendant's directed verdict motion and allowed the State to proceed with its aggravated burglary prosecution, using breaking and entering as the predicate felony for that crime in the jury instructions.

{12} Despite Defendant's eventual assertion that he did not have notice of the breaking and entering allegations, we conclude that Defendant had notice of these allegations when he was served with a copy of the criminal information. Count 1 of the information alleged, in part, that Defendant "did enter the dwelling house of [Victim] . . . without authorization or permission[.]" Count 3 of the information alleged, in part, that Defendant "did knowingly enter" Victim's premises "and damaged or destroyed a . . . back door[.]" Taken together, these allegations contain the essential elements of breaking and entering. *See* NMSA 1978, § 30-14-8(A) (1981) ("Breaking and entering consists of the unauthorized entry of any . . . dwelling . . . where entry is obtained . . . by the breaking or dismantling of any part of the . . . dwelling[.]"). Therefore, the "sum of the charges" contained in the criminal information gave Defendant "notice of the elements he needed to defend against[.]" *Hernandez*, 1999-NMCA-105, ¶ 28; *see also Villa*, 2004-NMSC-031, ¶ 12 (stating that the defendant must have adequate notice of the lesser included offense that the appellate court orders for entry on remand); *State v. Meadors*, 1995-NMSC-073, ¶ 19, 121 N.M. 38, 908 P.2d 731 (holding that the sum of the charges in the indictment gave the defendant "meaningful notice" that he needed to defend against the elements of a crime that was not explicitly charged in the indictment).

{13} Second, after the district court denied Defendant's directed verdict motion and

allowed the State to proceed with the theory that breaking and entering was the predicate felony under the aggravated burglary count, Defendant had an opportunity to defend against the breaking element when he put on his evidence, unlike the defendants in *Villa* and *Hernandez. See Villa*, 2004-NMSC-031, ¶ 13 (stating that direct remand was improper where that the defendant in that case did not have "a full and fair opportunity to marshal evidence and craft [his] argument to persuade the jury . . . against the elements of [the lesser included] offenses"); *Hernandez*, 1999-NMCA-105, ¶ 30 (suggesting that, if the defendant had known that he was in jeopardy for breaking and entering, he "would have put on specific evidence regarding, for example, preexisting damage to [the victim]'s door which would have contradicted the [s]tate's position that he broke or dismantled the door or lock . . . [or testimony about] whether [the d]efendant still had a key"). When defense counsel called Defendant to testify, he asked Defendant whether he was "able to use a key or anything to get in" to Victim's home. Defendant replied, "No." And although he denied kicking in the door, Defendant admitted that he "pushed" the door to enter the home. Defense counsel did not elicit further testimony from Defendant about the nature of his entry, nor did he attempt to rebut the State's substantial evidence that Defendant broke the door to enter the home. Defendant's theory of the case throughout the trial was that Defendant was justified in entering Victim's home by

whatever means necessary because he was concerned for the welfare of his dogs; the fact that he broke the door to enter the home was never in dispute. *See Meadors*, 1995-NMSC-073, ¶ 20 (stating that the defendant was not "taken by surprise" or his "defense . . . in any way impaired" because his "theory of the case differed from the [s]tate's theory only on the issue of his mental state at the time of the act" and not on the issue whether he did the act itself).

{14}     Third, unlike the sparse evidence of the breaking element in *Hernandez*, there was substantial evidence in this case that Defendant broke the back door to enter Victim's home. *See* 1999-NMCA-105, ¶ 30 (noting that the state presented "some" evidence about damage to the door, but did not adequately establish the fact that the defendant broke the door); *see also Haynie*, 1994-NMSC-001, ¶ 4 (justifying direct remand because, among other things, substantial evidence supported a conviction on the lesser included offense). Victim testified that she heard "crashing" just before Defendant came into her bedroom. She testified that "the whole [door] frame was broke" and that the door frame was not broken before this incident. Photographs of the broken door frame were admitted as exhibits and published to the jury. Both officers who responded to Victim's home right after the incident testified that one of the first things they noticed was that the frame of the back door was broken.

{15}     Fourth, unlike the jury in *Villa*, the jury in this case was instructed on the

11

elements of breaking and entering. *See* 2004-NMSC-031, ¶ 9 (distinguishing the case before them from *Haynie* because "the jury was not tendered an instruction on any lesser[]included offenses"). The breaking and entering elements were included alongside the instruction for aggravated burglary as a prerequisite for finding Defendant guilty of aggravated burglary.

{16}    Fifth, because the jury found Defendant guilty of aggravated burglary using instructions that contained the elements of breaking and entering as the predicate felony, the jury necessarily found that Defendant's conduct met the elements of breaking and entering; thus, there is no need to retry Defendant. *See Haynie*, 1994-NMSC-001, ¶ 4 ("[T]here is no need to retry a defendant for a lesser included offense when the elements of the lesser included offense necessarily were proven to a jury beyond a reasonable doubt in the course of convicting the defendant of the greater offense.").

{17}    All of these reasons lead us to conclude that "the interests of justice would not be served by remanding this case for a new trial[,]" *id.* ¶ 3; *see Villa*, 2004-NMSC-031, ¶ 9, and that direct remand for entry of judgment for breaking and entering and resentencing on that count is appropriate in this case.

**Confusing Jury Instructions**

{18}    Defendant asserts that the district court committed fundamental error because

12

it gave the jury confusing instructions concerning the lesser included offense of simple battery against a household member. We disagree.

**{19}** We review unpreserved claims of erroneous jury instructions for fundamental error. *See* Rule 12-321(B)(2)(c) NMRA; *State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134. "The doctrine of fundamental error applies only under exceptional circumstances and only to prevent a miscarriage of justice." *State v. Barber*, 2004-NMSC-019, ¶ 8, 135 N.M. 621, 92 P.3d 633 ("Error that is fundamental . . . must go to the foundation of the case or take from the defendant a right which was essential to his defense and which no court could or ought to permit him to waive." (internal quotation marks and citation omitted)). We reverse for fundamental error "only for the protection of those whose innocence appears indisputably, or open to such question that it would shock the conscience to permit the conviction to stand." *State v. Cunningham*, 2000-NMSC-009, ¶ 13, 128 N.M. 711, 998 P.2d 176 (internal quotation marks and citation omitted). In determining whether fundamental error exists, we evaluate the jury instructions as a whole. *Id.* ¶ 21.

**{20}** The district court instructed the jury on three crimes against household members, starting with the most severe crime and ending with the least severe crime. It first instructed the jury on the crime of aggravated battery against a household member *with* great bodily harm, a third degree felony. *See* NMSA 1978, § 30-3-16(C)

13

(2008, amended 2018). This instruction required, among other things, proof beyond a reasonable doubt that the injury to Victim resulted in one or more of the following: a high probability of death, serious disfigurement, loss of any member or organ of the body, or permanent or prolonged impairment of the use of any member or organ of the body. *See* UJI 14-131 NMRA (defining "[g]reat bodily harm"). Defendant does not contend that there are any errors in the district court's instructions for this crime, and we find no errors in these instructions. This was the crime for which the jury found Defendant guilty. We note that it did not find Defendant guilty of the next, lesser included offense of aggravated battery against a household member *without* great bodily harm, a misdemeanor. *See* § 30-3-16(B).

{21}     The next two instructions are those that Defendant contends were confusing. These instructions were intended to direct the jury to consider the even lesser included offense of simple battery against a household member. Simple battery against a household member does not require proof that Victim sustained any injuries from the battery. *See* NMSA 1978, § 30-3-15 (2008). We agree that these instructions contain errors that could have caused the jury some confusion. For example, they erroneously instructed the jury to consider, once again, the offense of "aggravated battery against a household member *without* great bodily harm," instead of the offense of simple battery against a household member. (Emphasis added.) And, although the next

14

instruction contained the elements of simple battery against a household member, it erroneously named the offense "battery against a household member *with* great bodily harm[.]"

{22}	However, the jury was instructed to consider these instructions only if it did not find that Defendant committed aggravated battery of a household member *without* great bodily harm. As we have noted, the jury found Defendant guilty of aggravated battery of a household member *with* great bodily harm, and it therefore had no need to consider the simple battery against a household member instructions. Furthermore, instructions on simple battery against a household member were not essential to Defendant's defense," *see Barber*, 2004-NMSC-019, ¶ 8; the instructions "as a whole" were not confusing as to the crime for which the jury ultimately found Defendant guilty, *see Cunningham*, 2000-NMSC-009, ¶ 21; and giving the jury these erroneous instructions did not create "a miscarriage of justice" in this case, *see Barber*, 2004-NMSC-019, ¶ 8. It does not appear that Defendant is "indisputably" innocent of aggravated battery against a household member with great bodily harm or that his guilt for that offense is "open to such question that it would shock the conscience to permit the conviction to stand." *Cunningham*, 2000-NMSC-009, ¶ 13 (internal quotation marks and citation omitted). Defendant dragged Victim through her home while severely beating her. He knocked out her tooth; bruised her head, face,

15

shoulders, arms, back, and torso; and sprained her ankle. Therefore, the errors in the jury instructions in this case are not fundamental and do not require reversal of Defendant's conviction. *See Barber*, 2004-NMSC-019, ¶ 8; *Cunningham*, 2000-NMSC-009, ¶ 13.

**Double Jeopardy**

{23}    Defendant asserts that his right to be free from double jeopardy under the federal and state constitutions was violated when he was convicted of both aggravated burglary and criminal trespass, because both offenses constitute the same conduct. We disagree.

{24}    As we have concluded above, there was insufficient evidence to sustain Defendant's conviction for aggravated burglary, and we have instructed the district court to enter judgment for breaking and entering. Because Defendant argues that it is the "breaking" aspect of the aggravated burglary offense, along with the criminal trespass offense, that constitutes the same conduct, we proceed to determine whether conviction for both breaking and entering and criminal trespass violates Defendant's double jeopardy rights.

{25}    "We generally review double jeopardy claims de novo." *State v. Rodriguez*, 2006-NMSC-018, ¶ 3, 139 N.M. 450, 134 P.3d 737. But "where factual issues are intertwined with the double jeopardy analysis, we review the [district] court's fact

determinations under a deferential substantial evidence standard of review." *Id.* Double jeopardy claims may be raised for the first time on appeal. *See* NMSA 1978, § 30-1-10 (1963); *State v. Lopez*, 2008-NMCA-002, ¶ 12, 143 N.M. 274, 175 P.3d 942.

{26} The right to be free from double jeopardy "protects against both successive prosecutions and multiple punishments for the same offense." *State v. Contreras*, 2007-NMCA-045, ¶ 19, 141 N.M. 434, 156 P.3d 725 (internal quotation marks and citation omitted). Multiple punishment problems may arise from double description claims, "in which a single act results in multiple charges under different criminal statutes," or unit of prosecution claims, "in which an individual is convicted of multiple violations of the same criminal statute." *State v. Bernal*, 2006-NMSC-050, ¶ 7, 140 N.M. 644, 146 P.3d 289. Defendant's claim is a double description claim because he asserts that his single act of "breaking a door" resulted in conviction under both criminal trespass and under the breaking and entering elements of his aggravated burglary conviction.

{27} We examine double description claims using the two-part test set forth in *Swafford v. State*, 1991-NMSC-043, ¶ 25, 112 N.M. 3, 810 P.2d 1223. The first part of the test asks us to determine "whether the conduct underlying the offenses is unitary, *i.e.*, whether the same conduct violates both statutes." *Id.* And the second part

of the test "focuses on the statutes at issue to determine whether the [L]egislature intended to create separately punishable offenses." *Id.* But, "[i]f the conduct is not unitary, then the inquiry is at an end and there is no double jeopardy violation." *Contreras*, 2007-NMCA-045, ¶ 20 (internal quotation marks and citation omitted). Conduct is not unitary unless "the same criminal conduct is the basis for both charges." *Id.* (internal quotation marks and citation omitted). "[W]e will not find that a defendant's conduct is unitary where the defendant completes one of the charged crimes before committing the other." *Id.* ¶ 21.

{28}    Here, the jury instructions establish that Defendant was tried and convicted under the elements of breaking and entering because he entered Victim's "dwelling" by means of "the breaking of a door[.]" He was tried and convicted for criminal trespass because he "damaged the bedroom door[.]" The evidence is clear that the door that Defendant broke to enter Victim's dwelling was the back door, and that after he broke the back door and entered the home, he proceeded to break another door—the bedroom door. These two acts are not the same conduct because he "complete[d] one of the charged crimes before committing the other." *Id.* Therefore, our inquiry ends, and we conclude that Defendant's constitutional right to be free from double jeopardy is not violated by conviction for both breaking and entering and criminal trespass. *See id.* ¶ 20.

## CONCLUSION

{29}     For reasons we have explained above, we affirm Defendant's convictions for aggravated battery against a household member with great bodily harm and criminal trespass; we reverse Defendant's aggravated burglary conviction; and we remand the case to the district court for entry of judgment for breaking and entering, contrary to Section 30-14-8, and for resentencing on that offense as the district court deems appropriate.

{30}     **IT IS SO ORDERED.**

_____

**LINDA M. VANZI, Chief Judge**

**WE CONCUR:**

_____

**STEPHEN G. FRENCH, Judge**

_____

**DANIEL J. GALLEGOS, Judge**